Parker, C. J.
We think that none of the objections, urged by the defendant’s counsel against the verdict, ought to prevail.
First, as to the form of the action, it is insisted, that, as Saunders’s interest in the vessel was insured by the defendant in the same policy, he ought to have joined in the action. But the policy is in a different form from those usually adopted in our offices. The plaintiff caused the insurance for whom it might concern, and the interest of Saunders was known at the time to the underwriters. It is in conformity with the contract, that the plaintiff should maintain the action in his own name ; and it is agreeable to usage, that he should do so on policies in this form. The principle, on which this objection is overruled, is settled in the case of Davis vs. Boardman. (5)
* The next objection is, that the master committed an act of barratry, in plundering British vessels of their cargoes, instead of bringing or sending the captured vessels into port for adjudication. But it appears that he was authorized to do this by his instructions from his owners ; and by the policy it appears, that procuring a cargo at sea was contemplated, even by the underwriters. This, therefore, if unlawful, is not barratry ; as it was for the interest, and pursuant to the orders, of the owners.
Another objection is, that there was a deviation by convoying the prize vessels ; and it is insisted that liberty to cruise and capture does not carry with it liberty to convoy. It does not appear that the ship went out of her way to convoy, or that she was delayed thereby; and it is found by the jury, that the risk was not increased by the act of convoying. This, then, does not amount to a deviation; and the case of Lawrence vs. Sydebotham, cited to maintain this point, is not applicable ; for there an actual delay was proved, the vessel insured *434 having shortened sail and Iain to, for her companions. No such facts appear in this case ; and a delay cannot be necessarily inferred from convoying ; for it may be that the captured vessels were the swiftest sailers, and that they lay to for the ship insured.
As to the point, that the voyage had terminated before the capture, because the ship went into several ports in quest of prizes, little stress can be laid on this, for she did not go into any port with a view to ■finish her voyage, or to get a return cargo there, but only in furtherance of her cruising intentions, according to the liberty secured by the policy.
With respect to the illegality of the contract, on the ground that the object of the cruise was, to plunder the vessels of the enemy, instead of bringing them into port, some further consideration of this subject may be necessary.
It is said to be contrary to the law of nations, to adopt a practice of this sort even against enemies ; and * especially as the property of neutrals may be endangered thereby, and the neutral owner be put to great expense and trouble in reclaiming his property, and very often would be without remedy.
The practice is undoubtedly disgraceful among civilized nations , and neutral nations have cause of complaint against any belligerent government which authorizes its subjects to prey upon defenceless vessels, and plunder them of their cargoes, upon pretence that they belong to the enemy ; instead of carrying them into port for trial, where the neutral may assert his claim. But the law of nations admits of capturing the property of enemies, without any restriction as to the mode. The captor takes the property at the risk of its belonging to the enemy. If it belong to neutrals, he is liable in damages.
It is not suggested, that the property captured by the ship insured in this case was neutral. But it is argued, that such acts are in violation of the statute of the United States, which regulates the conduct of private armed ships, and the disposition of the captured property. This act does not make it unlawful to take property out of ships captured. It is merely directory as- to the disposition of vessels and property captured ; and obedience to the law is enforced by bonds and penalties. Property captured, and not dealt with according to this statute, we apprehend, would not be restored, if belonging to the enemy. But the captor might be sued upon his bond, or otherwise punished, for not obeying the directions of the statute. We do not think, therefore, that this contract of insurance, which recognizes the object of the cruise, was unlawful, so as to render the policy void

Judgment according to the verdict.

 12 Mass. Rep. 80.