## GOODALL v. THE NEW ENGLAND MUT. FIRE INS. CO.

The interest of the assured in the property at risk, need not be a legal one. A mere equitable title or any qualified property in the thing insured, may be legally protected by insurance.

A trustee who has no personal interest in the property may get the same insured in his own name; and an agent or factor who has the custody of goods for sale on commission, may insure them.

Where the agent of a manufacturing company applied for insurance on the building and machinery belonging to the company, and the insurers issued to him a policy, and therein promised to insure him, his successors and assigns, on the property of the company, and to pay or satisfy him, his successors or assigns, the sum insured—*Held*, that in case of loss a suit might be maintained by the agent for the recovery of the whole amount lost.

Where the charter of an insurance company provided that if any other insurance should be obtained on any property insured in that company, notice should be given to the secretary and the consent of the directors obtained, otherwise the policy should be void; and the evidence tended to show that the secretary knew of and advised to the second insurance, and that the directors verbally consented to the same—*Held*, that written notice and consent were not necessary, and that the evidence was competent to show both notice and consent.

The testimony of one of the directors of an insurance company as to the practice in giving consent in cases of second insurance, so far as the same came to his knowledge, is incompetent to establish any custom of the company that shall bind the assured, he being ignorant of the practice.

It is not necessary that a policy be actually issued by an insurance company in order to bind the company. The risk commences from the time of the approval of the application and the payment or security of the premium. And where the secretary of a company gave to the applicant a certificate that the directors consented that a policy already issued might cover other property than that originally insured—*Held*, that the certificate was evidence of a contract for insurance upon such other property.

ASSUMPSIT upon a policy of insurance. The defendants were summoned to answer to David G. Goodall, of Lisbon, in this county, as agent of the Lisbon Manufacturing Company, a firm consisting of James Allen and Greenleaf Cummings, both of Lisbon, late partners by the style of Allen & Cummings, and said David G. Goodall and Ira Goodall, of Bath, partners by the style of I. Goodall & Son, and Ira

11

Goodall in his private capacity, all being the owners of said Lisbon Manufacturing Company's buildings, fixtures and machinery, and partners in manufacturing cloths and carding wool, by the style of the Lisbon Manufacturing Company.

The declaration contained three counts. The first was as follows : " for that the said plaintiff, by the name of D. G. Goodall, on the 31st day of October, A. D. 1846, at Concord, in our county of Merrimack, to wit, at said Lisbon, caused to be made a certain writing or policy of insurance purporting thereby and containing therein that the said D. G. Goodall, as well in his own name as for and in the name of agent for the Lisbon Manufacturing Company, owned as aforesaid, did then and there make insurance and cause to be insured David G. Goodall, by said style as aforesaid, as follows, to wit : That whereas D. G. Goodall, agent of Lisbon Manufacturing Company, of Lisbon, in the county of Grafton and State of New Hampshire, has become a member of the New England Mutual Fire Insurance Company, and bound and obliged himself, his successors or assigns, to pay all such sum or sums of money as should be assessed by the directors thereof, pursuant to the act incorporating said company, to said policy annexed, and also had secured to said company the sum of three hundred and twelve dollars, being the amount of the deposit or premium note for insuring the sum of two thousand dollars unto the said D. G. Goodall, his successors and assigns, on the following property, to wit : on the building and fixed machinery of the Lisbon Manufacturing Company, one thousand dollars ; on the movable machinery therein, one thousand dollars, then situated as described in the plaintiff's application, reference in said policy being had to the application of the said plaintiff for a more particular description and as forming a part of said policy, during the term of three years, commencing at noon on the thirty-first day of October, eighteen hundred and forty-six, and ending at noon

on the same day of the same month, eighteen hundred and forty-nine. And it was declared and made known by said policy that the defendants, the members of said company, for and in consideration of the premises, did by said policy certify that the said Goodall had become insured in and by said company upon the property aforesaid in the sum of two thousand dollars. And they, the said defendants, did therefore promise according to the provisions of said act to pay or satisfy the said Goodall, his successors or assigns, the sum of two thousand dollars within three months next after the said property should be burnt, destroyed or demolished by reason or means of fire, and due notice thereof should be given as aforesaid, during the time the said policy should remain in force, unless in either of said cases the directors of said defendants' company should, within the said three months, have determined to rebuild the building or buildings destroyed. And said defendants did further, in and by said policy, promise that when and so often as the property aforesaid, or any part thereof, or any other of equal value, built or supplied in the room thereof, should happen to be injured by means of fire, such damage should be made good according to the estimate thereof, or repaired and put in as good condition as the same was before said fire happened. Provided that if it should happen that the whole stock and contribution of the said company should ever be insufficient to pay and satisfy all the losses sustained by the members of said company, in such a case a just average should be made, and the payment which was to be demanded in virtue of said policy should be a dividend of the said stock and contribution, in proportion to the sum insured, agreeably to the tenor and true intent of the act aforesaid. And said defendants further promised, on the 13th day of June, 1848, at said Concord, that said defendants, by their directors, consented that said policy of insurance might be continued, and might cover new machinery, wheels, drums and flume, in consideration of an additional representation having been

received on said June 13th, and attached to the original application of D. G. Goodall, agent as aforesaid, as by the said policy of insurance and application, reference being had thereunto, will more fully and at large appear. And the said D. G. Goodall in fact says that the said policy of insurance and application were so made by him, the said D. G. Goodall, as aforesaid, as well for himself as for and as the agent of Allen & Cummings, and I. Goodall & Son, and Ira Goodall aforesaid, partners as aforesaid, and for his and their use and benefit, and that he, the said plaintiff, D. G. Goodall, did effect the said policy of insurance at the special instance and request of said Allen & Cummings, I. Goodall & Son, and Ira Goodall as aforesaid, and as agent as aforesaid, to wit, at the time and place aforesaid, of all which said premises the said defendants then and there had notice. And then and there the said defendants, in consideration that the said D. G. Goodall, at said defendants' special instance and request, had then and there secured to said defendants the sum of three hundred and twelve dollars as aforesaid, and for the purpose aforesaid, and had then and there undertaken and promised the said defendants to perform and fulfil all things in the said policy of insurance contained, on the part and behalf of the insured to be performed and fulfilled—they the said defendants undertook and then and there promised the said D. G. Goodall that they, the said defendants, would become and be insurers to the said D. G. Goodall of the said sum of two thousand dollars upon the said building and fixed machinery and movable machinery therein, in the said policy of insurance mentioned, and would perform and fulfil all things in the said policy of insurance mentioned, on said defendants' part and behalf as such insurers, in the sum of two thousand dollars, to be performed and fulfilled. And the said defendants then and there became and were insurers to the said D. G. Goodall, and then and there, by Josiah Stevens as President of said New England Mutual

Fire Insurance Company, and J. E. Lang as Secretary of said insurance company, agents of the defendants, duly authorized in the said defendants' behalf, then and there subscribed the said policy of insurance, as such insurers, of the said sum of two thousand dollars on the said building and fixed and movable machinery as aforesaid. And the said D. G. Goodall further says that on the day of the making of said policy of insurance, and from that time to the loss of said building and fixed and movable machinery by fire, hereafter mentioned, said building and fixed machinery were of the value of three thousand dollars, and the movable machinery therein was of the value of two thousand dollars. And the said D. G. Goodall was then and there interested in said building and fixed and movable machinery therein, and from thence continually afterwards until and at the time of the loss hereafter mentioned, to a large value and amount, as agent as aforesaid, to the whole amount of all the moneys by him ever insured or caused to be insured thereon, to wit, at Lisbon as aforesaid. And the said D. G. Goodall, besides his interest as agent as aforesaid, was interested with the said Ira Goodall by the style of I. Goodall & Son as aforesaid, to the amount of one-third part of all the value of said building and fixed and movable machinery therein, of the value aforesaid. And the said Allen & Cummings were interested to the amount of one-third part of the said building and fixed and movable machinery therein, valued as aforesaid, and the said Ira Goodall in his private capacity was interested to the amount of the remaining third part of said building and fixed and movable machinery therein, valued as aforesaid, all undivided. And the said D. G. Goodall further says that heretofore, to wit, on the 17th day of September, A. D. 1849, the said building and fixed machinery and movable machinery therein insured as aforesaid, were totally destroyed by fire; and thereby the said building and fixed and movable machinery then and there became and were

wholly lost to the said D. G. Goodall, and to the said I. Goodall & Son, and Ira Goodall, and to the said Allen & Cummings.

Of all which several premises the said defendants afterwards, to wit, on the 16th day of October, 1849, at said Concord, had notice in writing, and were then and there requested by the said D. G. Goodall, agent as aforesaid, to pay him the said sum of two thousand dollars, so by them insured as aforesaid, and which said sum of two thousand dollars the said defendants then and there ought to have paid, according to the form and effect of the said policy of insurance and said defendants' said promise and undertaking so by them made as aforesaid, in and by said policy of insurance.

And the plaintiff avers that the stock and contribution of the said insurance company is and was, at the time of the loss as aforesaid, sufficient to pay and satisfy all the losses sustained by the members of said company. Yet the defendants, though often requested, have not paid the same, but neglect and refuse so to do."

The second count was an abridged repetition of the first; and the third was a general one for money had and received.

The plea was the general issue.

On the trial the plaintiff introduced the policy of insurance declared on, and which is substantially set forth in the first count of the declaration, bearing date October 31st, A. D. 1846. Annexed to the policy, at the time it was issued by the defendants and delivered to the plaintiff, was a copy of the act of incorporation and by-laws of the New England Mutual Fire Insurance Company, and to which was subsequently annexed the memorandum or agreement referred to in the declaration, dated June 13th, 1848, and which was as follows:

" *New England Mutual F. I. Company.*
*Concord, June* 13, 1848. An additional representation
having been received this day, and attached to the original
application of D. G. Goodall, agent, No. 2323, the directors
consent to the continuance of this policy, and may cover
new machinery, wheels, drums and flume.
J. E. LANG, Secretary."
" Affix this to your policy."

He also introduced the application on which the policy
was issued, dated October 31st, 1846, signed by the plain-
tiff, as agent of the Lisbon Manufacturing Company, and
the notice and statement of the loss, signed by all the part-
ners in the company. The policy, charter, by-laws and
application were all made a part of the case sent up, and
so far as may be necessary, will be introduced into the opin-
ion of the court.

It was also proved or admitted that the building men-
tioned in the application and policy, with its contents, was
wholly destroyed by fire on the 20th of September, 1849,
that notice of the loss was given to the defendants on the
16th of October, 1849, and that the title and ownership of
the property at the time of the insurance and loss were truly
set forth in the declaration.

On the part of the defendants it was objected that from
this evidence it appeared that the contract of insurance was
made with the Lisbon Manufacturing Company, and that
therefore the suit could not be maintained by the plaintiff
in his own name ; and that if the suit could be maintained
in the name of the plaintiff, he was entitled to recover only
such share of the whole amount recoverable under the pol-
icy as would be in proportion to his interest in the property
insured ; but the court held that the plaintiff was entitled
to recover in this suit the whole amount for which the de-
fendants were liable under the policy.

The defendants introduced the act of the legislature by

which they were incorporated, and the by-laws adopted by the company, copies of which were appended to the case, and will be introduced, so far as may be necessary, in the opinion of the court. They then introduced evidence to prove that on the 14th day of February, 1849, the plaintiff made application to the Manufacturers' Union Mutual Fire Insurance Company for an additional insurance upon said property, and that upon that application a policy was issued by the Union company, bearing date February 14th, 1849, copies of which application and policy were also annexed and made a part of the case, and will also be embraced in the opinion of the court, so far as necessary. This policy was in force at the time of the loss, and the defendants contended that as no notice of the additional insurance was given to the secretary of the New England company, nor the consent of the directors thereof obtained, agreeably to the requirements of the twelfth section of their act of incorporation, the policy declared on thereby became void.

The plaintiff, for the purpose of proving such notice and consent, offered evidence tending to show that from the 23d of August, 1848, until after the issuing of said policy by the Manufacturers' Union Company, both of said insurance companies, by an arrangement made between their separate boards of directors, occupied the same room in a building on Main street, in Concord, as their office and place of business, and transacted their business therein ; and by an agreement made between the said boards, chose the same person as secretary of both companies, who kept his office and transacted his official business for both companies in that room ; that at the time the application was made to the Union company and the policy was issued by them, three persons, to wit: Cyrus Barton, William Prescott, and Seth Eastman, were directors of both of said companies, and that both of the boards of directors held their meetings for the transaction of business in that room ; that in the winter of 1848–9, the plaintiff, then having the insurance of two

thousand dollars in the New England company, was desirous of obtaining an additional insurance thereon of about one thousand dollars, and requested one Darling, who was an agent for obtaining applications and effecting insurances in the New England company, to apply for and obtain such insurance; that Darling thereupon made out an application addressed to the New England company, for a new insurance upon said property to the amount of about three thousand dollars, which being signed by the plaintiff, was carried by Darling to Concord, and presented to J. E. Lang, then secretary of both of said insurance companies, at their said office; that at the time it was so presented there were several persons present, sitting at the table in the room, among whom was said Barton and one or more of the directors of the Union company; that on looking at the application, Lang remarked that the New England company could not take any one risk of a greater amount than twenty-five hundred dollars, and that the plaintiff had better have part of his insurance in the Union company; that Darling then inquired whether the Union company would be willing to take a part of the insurance, to which Lang replied that it could easily be ascertained, as there were directors of both companies present; that thereupon the application was handed by Lang to Barton, and by him to some other persons, and it was passed round among them and examined; that some conversation took place among them upon the subject, and it was then stated that there would be no objection to the Union company's taking one thousand dollars, and Darling was told by Lang that the caption or address of the application might be changed to the Union company, and the amount of insurance requested might be reduced to one thousand dollars, and the Union company would insure that amount, and the existing policy in the New England company might remain as it was, with the privilege of renewing or extending it for the two thousand dollars when it expired; that Darling preferring to

consult the plaintiff before making the alteration, took back the application, with the understanding that when he saw the plaintiff, if he desired, he was to forward the application for the additional insurance in the Union company for the thousand dollars, and retain his existing insurance for two thousand dollars in the New England; that upon carrying back the application to the plaintiff he concluded to have the additional insurance in the Union company, and the application was forwarded to the Union company, and the policy issued thereon by that company; and that when the application was received at the office it was approved by said Prescott and N. S. Chandler and B. W. Sanborn, two other directors of the Union company, in the presence of said Barton.

The defendants objected that this evidence was insufficient to prove the consent of the directors of the New England company to the additional insurance, because such consent can be proved only by the records of the doings of the directors, and not by parol testimony, and because if such consent may be proved by parol, the evidence does not show the consent of a majority of the directors; and that it was insufficient to prove either the notice to the secretary of the New England company, or the consent of the directors thereof, because it does not tend to show any such notice or consent after the additional insurance was effected; but the objections were overruled by the court, and the evidence admitted as competent to prove both the notice to the secretary and the consent of the directors of the New England company.

The defendants introduced the deposition of William Prescott, in which were contained the following interrogatories and answers, to wit:

" *Int. third.* What has been the practice of the New England company respecting applications for consent to additional insurance in other companies? State in what man-

ner those applications are made and the consent thereto given?

*Ans.* Such applications are uniformly requested to be made in writing, and are so made; and when consent is given, it is done in writing by one or more of the directors.

*Int. fourth.* State whether or not this has been the uniform practice of the company, and also whether or not you recollect any instance in which the practice has been departed from, either in respect to applications for consent to additional insurance in the Union, or any other company?

*Ans.* That has been the uniform practice; and I know of no instance in which it has been deviated from. Persons sometimes call and verbally request such consent, but so far as I know, they are always required to reduce their request to writing."

These answers were objected to by the plaintiff, and were ruled out by the court, subject to the defendants' exceptions.

It was further proved on the trial, that in the spring of 1848, a new penstock, flume and water-wheel, and other new fixtures, were made in the building insured, and at the same time a considerable quantity of new movable machinery was placed therein, for the purpose of making a change in the business carried on in the mill; and it was contended by the defendants that such additions and new fixtures and machinery were not to be taken into the account, in estimating the value of the property insured at the time of the loss; and, by consent, the jury were directed, in answer to inquiries proposed to them for that purpose, to find separately what was the value, at the time of the loss, of the building and fixed machinery, including said additions and new fixtures; of the building and fixed machinery, exclusive of the additions and new fixtures; of the movable machinery, including all the new machinery, and of the movable machinery, exclusive of the new machinery. And in answer to the several inquiries, the jury found that the value

of the building and fixed machinery, including additions and new fixtures, was one thousand nine hundred and seventy dollars and fifty-four cents; of building and fixed machinery, exclusive of additions and new fixtures, was one thousand five hundred and twelve dollars and four cents; of movable machinery, including new machinery, was two thousand and sixty-one dollars; of movable machinery, exclusive of new machinery, was eight hundred and two dollars; and thereupon a verdict was taken by consent for the plaintiff, under the direction of the court as to the amount, for the sum of two thousand two hundred and ten dollars, being the amount of the insurance, with interest thereon from the expiration of three months after notice of the loss, subject to the opinion of the court upon the foregoing case,—the verdict to be set aside and judgment rendered for the defendants, or a new trial granted; or the verdict amended and judgment rendered thereon, or judgment upon the verdict as rendered, according to the opinion of the court upon the case. And the various questions arising upon the case were transferred to this court for determination.

*Quincy*, for the defendants.

The defendants rely upon the exceptions stated in the case. None but parties to a contract of insurance, or their legal representatives, can sustain an action on a policy of insurance, although others may have a legal or equitable interest. 8 Mass. Rep. 517; 3 Hill 88; 5 Wendell 203; 20 Pick. 259.

In the application and policy the property insured is described as belonging to the Lisbon Manufacturing Company, and that the plaintiff was the agent. The contract must, therefore, be taken as made with the principal.

By section third of the act incorporating the defendants, it is provided that the property and concerns of the corporation shall be managed by five directors, and a majority of the whole number shall constitute a quorum.

By the twelfth section of the act, notice must be given to the secretary of additional insurance, and the consent of the directors obtained.

These provisions have not been complied with. No notice whatever was given after the additional insurance was made, and no consent of any of the directors obtained.

The evidence offered does not prove a consent, in any form, by a majority of the directors, which is required by the act.

The plaintiff cannot recover for the machinery placed in the building in 1848, because there is no count in the declaration under which it can be recovered; and because there is no contract of insurance, in regard to said machinery, in conformity to the charter and by-laws of said corporation.

Article eleventh of the by-laws provides that when there is a double insurance, the company are only liable to a ratable proportion of the loss.

Section fourth of the act of incorporation provides that the directors shall determine the amount to be insured on any proposed risk, not exceeding two-thirds of the value of the property insured.

From the verdict of the jury and from the policies of the New England and Union companies, it appears that more than two-thirds of the value of the property was covered by insurance, even including the additions made thereto in 1848. Two-thirds of that value being $2,687,69, while the amount covered by the policies is $2,900, making the amount of over insurance $212,31. Of this excess, twenty twenty-ninths, or $146,42 is to be deducted from the amount covered by the New England policy.

If the additions of 1848 be excluded from the defendants' liability, it is found that the value of the property was only $2,314,04, two-thirds of which is $1542,69, while the amount covered by said policies is $2900, being an excess of $1357,31; twenty twenty-ninths of which, being $936,09,

is to be deducted from the amount covered by the New England policy.

If we exclude the additions, and throw the Union insurance out of the question, still the defendants would be liable only for $1534,66, viz: $1,000 on building and fixed machinery, and two-thirds of $802, or $534,66, on movable machinery.

*Bellows*, with whom were *I.* and *S. H. Goodall*, for the plaintiff.

I.   The promise having been made expressly to the plaintiff, he may sue.   2 Philips on Insurance 593 and note 6 ; 2 Arnold on Insurance 1249; Paley on Agency 151, 364; *Stirling* v. *Vaughan*, 11 East 619; *Wolf* v. *Harncastle*, 1 B. & P. 316 ; Story on Agency, §§ 109, 161, also 272, 394 ; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wendell 72 ; *Snyder* v. *Farmers' Ins. Co.* 13 Wendell 92 ; *Doe* v. *Thompson*, 2 Foster's Rep. 217 ; *Ward* v. *Wood*, 13 Mass. Rep. 539.

II.   As to consent to the additional insurance, there was evidence tending to prove that two of the directors consented to the additional insurance.

The position that the consent must be shown by record, is not sustained by anything in the charter, or by any authority that we can find.   But the authorities are the other way. Angel & Ames on Corporations; cases cited in 1 U. S. Digest 589; *Hamilton* v. *Lycoming Ins. Co.* 5 Barr 339 ; 8 U. S. Digest 77.

The provision in the charter, section twelve, is simply that the consent of the directors shall be obtained; and section ninth provides that a policy, signed by the president and secretary, shall be binding.   Applications are to be approved by two directors ; by-laws § 9.

So the corporation, unless restrained by express provision in the charter, may contract through an agent.   *Conover* v. *Mutual Ins. Co.* 3 Denio 254; *same case,* 1 Comstock 290;

*Despatch Line of Packets* v. *Bellamy Man. Co.* 12 N. H. Rep. 236.

By section fourth of the charter, the president and directors shall appoint officers and prescribe their duties. And under this they may delegate their authority to one or more of their number, or to the secretary, or any agent, to assent to a further insurance. The assent was at a meeting of the board, at their regular place of business, and for aught that appears, it was the act of the majority, and such is the presumption, and the jury could so have found it on the proof, although we contend it was not necessary. Neither the act of incorporation nor the by-laws require the consent to be in writing. Nor is it required by any public law; but, on the contrary, agents, empowered to act generally for the corporation, may be appointed by parol, and their authority even presumed from the general course of business. *Richardson* v. *St. Jos. Ins. Co.* 5 Blackf. 146; *City of Detroit* v. *Jackson,* 1 Dougl. 106; *Badger* v. *Bank of Cumberland,* 13 Shepl. 428.

If a general agent may be appointed by parol, it is not easy to see why he may not act by parol, when the law does not require it to be in writing. *Despatch Line of Packets* v. *Bellamy Man. Co.* shows that a written assent is not necessary.

The consent of the company need not be after the additional insurance. There is nothing in the charter or by-laws that requires it. See charter, § 12. Such cannot be the true construction of that provision, for it would involve the absurdity of making void every policy.

As a further answer to the position of the defendants, we contend that as the business was done at the regular office of the company, by and through the secretary and directors, who, in connexion with Darling, their agent, had full knowledge of all the circumstances of the business, and the wants and objects of the plaintiff, the company cannot now be permitted to say that the assent was not formal. They stood

by and saw the business done in this manner and made no objections, and they are estopped to insist on any mere formality.

Again, we say that their consent is conclusively proved by the approval of the application and the issuing of the policies, both being done by officers of the New England company. *Potter* v. *Ontario & Livingston Mut. Ins. Co.* 5 Hill 147; *McEwen* v. *Montgomery Ins. Co.* 5 Hill 101.

III. The testimony of Dr. Prescott, as to the practice of the company, was properly rejected, as being wholly immaterial, as much so as the practice of an individual.

IV. As to the amount of liability. No point was made that there was a fraudulent over-valuation; and independent of the charter and by-laws, the company would be liable for the whole, as in the case of a valued policy. At common law, the agreement of the parties as to the value is conclusive. 2 Philips' Insurance 2.

Section 9 of the charter provides that the company shall be liable for no more than the proportion of the actual value of the property which was intended to be insured therein. Section 11 of the by-laws provides that in case of double insurance, the company shall be liable only to a ratable proportion of the loss. Otherwise there is nothing in the policy on this subject. Section 9 of the charter is obscure somewhat, but we say that the amount intended to be insured is the amount agreed to be insured. If it be contended that this is to be construed by reference to section 4, authorizing them to insure to the amount of two-thirds of the value, we reply that this provision is merely directory, and the company is bound, in the absence of fraud, by what they agree to. But should the court hold otherwise, the value referred to must be the value at the date of the policy; and that not being shown by the verdict of the jury to be less than the amount required to uphold the full amount of the insurance, the verdict must stand.

The additions and new fixtures are covered by the policy.

In the first place, without any consent, they would be covered, as in the case of a stock of goods which is constantly shifting. *Law* v. *Maine Mut. Ins. Co.* 3 Fairfield's Rep. 44. So here in the case of a manufacturing establishment, no day passes without more or less change by alterations and repairs.

The consent indorsed by the secretary is to be presumed to be authorized, and according to the usual form in such cases, it being a printed form.

Again, we say this is not a case of double insurance, and, therefore, the provision does not apply. *Howard Ins. Co.* v. *Scribner,* 5 Hill's Rep. 298.

EASTMAN, J.   Upon the facts set forth in the application of the plaintiff for insurance, and in the policy issued thereon, the defendants contend that their contract of insurance must be taken as made with the Lisbon Manufacturing Company, and not with the plaintiff, and that, consequently, this action cannot be maintained.

The plaintiff, in his application to the defendants for insurance, commences by saying, that " the undersigned, David G. Goodall, agent of the Lisbon Manufacturing Company, hereby requests insurance against fire by said company, in the sum of two thousand dollars, on the property herein specified," setting it forth, and proceeds to state that he will be held responsible for the correctness of the application in answering interrogatories, &c.

In the policy issued, the defendants allege that " whereas D. G. Goodall, agent of the Lisbon Manufacturing Company, has become a member of the New England Mutual Fire Insurance Company, and bound and obliged himself, his successors or assigns, to pay all such sum or sums of money as may be assessed, &c., and also secured to the company the sum of three hundred and twelve dollars, being the amount of the deposite or premium-note for insuring the sum of two thousand dollars unto the said D. G. Goodall,

12

his successors and assigns, to wit: on the building and fixed machinery of the Lisbon Manufacturing Company, one thousand dollars, and on the movable machinery therein one thousand dollars, now be it known that we, the members of said company, for and in consideration of the premises, do hereby certify that the said Goodall has become insured in and by said company, upon the property aforesaid, in the sum of two thousand dollars. And we do further promise to pay or satisfy the said Goodall, his successors or assigns, the aforesaid sum of two thousand dollars," &c.

Such are the facts upon which this first position of the defendants rests. Can it be sustained?

It is well settled that the interest of the assured in the property at risk need not be a legal one. A mere equitable title, or any qualified property in the thing insured, may be legally protected by insurance. *Columbian Ins. Co.* v. *Lawrence,* 2 Peters' Sup. Court Rep. 25; *Strong* v. *Manu. Ins. Co.* 10 Pick. 40; *Locke* v. *North American Ins. Co.* 13 Mass. 61; *Oliver* v. *Green,* 3 Mass. 133. And it is said that the term *interest,* as used in regard to the right to insure, does not necessarily imply any property in the subject of insurance. *Buck* v. *Chesapeake Ins. Co.* 1 Peters' Rep. 163.

A trustee who has no personal interest in the property, may procure the same to be insured in his own name. 2 Greenl. on Ev. § 379. So an agent or factor, who has the custody of goods for sale on commission, may also effect an insurance upon them. 3 Kent's Com. 371; *DeForest* v. *Fulton Fire Ins. Co.* 1 Hall's (N. Y.) Rep. 84. In the last case cited, it was held that a commission merchant, consignee or factor, having goods of the consignor or principal in his possession, has an insurable interest therein; not merely to the extent of his commissions, but to the full value of the goods, without reference to his lien. He was to be deemed owner as to all the world, except his principal, for the purpose of an insurable interest.

If the defendants in this case had intended to make a contract of insurance with the Lisbon Manufacturing Company, and with them alone, why did they not issue their policy in accordance with that intention? The plaintiff represented the situation of the property truly. His object was to effect an insurance, so that in case of loss all parties interested might be protected; and it could make no difference to him whether the policy run to the Lisbon company or to himself. It could certainly be no advantage to him to have the policy made out in his name. He could hold no more than his due share, upon a final settlement with his partners in the company; and he might, in the event of their failure, be subjected to the payment of assessments, which might not fall upon him were the policy issued to the Lisbon company. He was one of the firm of Ira Goodall & Son, and that firm owned one-third of the property of the Lisbon Manufacturing Company. As a private individual, he was interested to that extent, and no further. But as representing the interests of the whole manufacturing company, he had a sufficient interest in the property, and a right, upon a true statement of its situation and ownership, to effect an insurance in his own name upon the whole property, for the benefit of the company, if the insurance company would so agree. And the defendants could issue a policy to him or to the Lisbon company, as they might see fit. They chose to make the contract with him. They insured him and his successors and assigns; and having made the contract with the plaintiff, the suit is properly brought in his name. *Jefferson Ins. Co.* v. *Cotheal,* 7 Wendell's Rep. 72; *Snyder* v. *Farmers' Ins. & Loan Co.* 13 Wendell 92; *Ward* v. *Wood,* 13 Mass. Rep. 539.

This view does injustice to no one. If the defendants have not insured Goodall, they must admit that they have the Lisbon Manufacturing Company, otherwise they have issued the policy in bad faith, which we will not suppose. To hold, then, that the plaintiff cannot sustain a suit upon

this policy, would only be to decide that the Lisbon Manu-facturing Company can.   And this can in no way be neces-sary for the protection of the defendants, since after judg-ment in favor of the plaintiff, a plea of such judgment, setting forth in due form the declaration upon which it was founded, would be a perfect answer to any action by the Lisbon Man-ufacturing Company.

In the event of a recovery by the plaintiff, the disposition of the amount to be received would be a matter between him and the Lisbon Manufacturing Company.   But should it be made to appear that he was about to appropriate the avails to his own private use, the court might perhaps make an order directing a proper disposition to be made.

But there is no suggestion from the Lisbon company that they do not recognise the doings of their agent in effecting the insurance and bringing the suit; but so far as we can judge from the case, the whole has been done with their de-cided approval.

The second position taken by the defendants against the plaintiff's right of recovery is this, that the plaintiff obtained another insurance upon the same property in the Union Mutual Fire Insurance Company, without giving any notice to the defendants thereof, or obtaining the consent of the directors therefor, and that thereby the policy declared on became void.

This objection is founded upon the twelfth section of the defendant's charter, which is as follows; " That all appli-cants for insurance shall give notice to the secretary of any existing policy on the property to be insured; and if any other insurance shall be obtained on any property insured by this company, notice shall be given to the secretary, and the consent of the directors obtained, otherwise the policy issued by this company shall be void."

By an examination of the papers which make a part of the case, it appears that the policy in suit was issued Octo-ber thirty-first, 1846, and was to continue three years.   On

the fourteenth of February, 1849, the plaintiff procured a policy from the Union company, insuring one thousand dollars, eight hundred of which was upon the same property insured by the policy issued by the defendants. This second insurance would, by the twelfth section of the defendant's charter, which formed a part of the policy issued by them, render that policy void, unless notice of the insurance was given to the secretary, and the consent of the directors obtained. The soundness, then, of this second position of the defendants, depends upon the fact of notice and consent, according to the requirement of this twelfth section.

There is no pretence that any formal written notice was given, or any written consent of the directors obtained; but the plaintiff contends that the twelfth section was substantially complied with by what transpired between him and Darling, the agent, and the directors of the company. The evidence offered by the plaintiff upon this point is fully reported in the case, and from the statement of facts there made, it cannot be doubted that the secretary of the New England company was fully aware of the second insurance in the Union company. He was, in fact, the very person who not only issued the Union policy, but suggested the manner in which it could be done. Being secretary of both companies, he as well knew of the double insurance as though a written notice had been served upon him, and it would seem to be entirely a work of supererogation to do it.

Neither can it be doubted that there was in fact, though not of strict record, a consent by at least two of the directors of the New England company to the insurance in the Union company. Col. Barton examined the matter when Darling first brought in the application, and Dr. Prescott afterwards approved of the issuing of the Union policy. These gentlemen were directors of both companies. By the ninth section of the by-laws of the New England company, two directors could approve of applications, and we

discover no good reason for requiring a larger number to consent to a second insurance. We think, too, that were it necessary, we might *hold* the evidence competent for the jury to find an approval, by a majority of the directors, at the time the application was passed round the room and examined by Barton and others.

It is to be observed that the twelfth section does not require that the notice to the secretary, or the consent of the directors, shall be in writing; but even were it so, it might well be argued that the secretary and directors had by their acts waived the requirement. In *Roumage* v. *Insurance Co.* 1 Green's Rep. 110, it was held that where the conditions of insurance required that notice of loss should be given forthwith, and it appeared that officers of the insurers were on the ground of the fire the day after the fire, for the purpose of examining into the matter, that this was sufficient evidence of notice.

And where a policy required notice of further insurance to be given, and the assent of the company to be indorsed on the policy, or otherwise acknowledged and approved by them in writing, it was held that a letter from the secretary of the company, saying, " I have received your notice of additional insurance," was a sufficient approval and acknowledgment in writing. *Potter* v. *Ontario Ins. Co.* 5 Hill's (N. Y.) Rep. 147.

In *McEwen* v. *Montgomery Ins. Co.* 5 Hill 101, it was held that a parol notice of a prior insurance, given to a company before a second insurance, is a sufficient notice, where the policy does not require such notice to be in writing. And in this case it was further held that such verbal notice was sufficient, if given to the travelling agent of the company, though it never reached the company.

But without recurring specially to authorities, as we are aware that in many instances there is a material difference in the particular provisions of the charters and by-laws of different mutual insurance companies, which form the basis of

the decisions, it appears to us that, upon general principles, we ought to hold that the defendants should not be permitted to avail themselves of this defence.    They stood by and saw all that was taking place and actually took part therein, and they should be estopped by their conduct and demeanor from saying that they had no notice of the second insurance, and did not consent thereto.    These general principles may be found in *Runlet* v. *Otis*, 2 N. H. Rep. 167; *Morse* v. *Child*, 6 N. H. Rep. 521; *Eaton* v. *Rice*, 8 N. H. Rep. 378; and *Thompson* v. *Sanborn*, 11 N. H. Rep. 201.

We entertain no doubt that the ruling of the court upon this point was correct, and that the evidence was competent to show both notice and consent within the requirements of the twelfth section of the charter.

The answers of Prescott reported in the case were properly ruled out.    They were not pertinent or material to the issue to be settled.    What the practice of the company was so far as his knowledge went, could not be binding upon this plaintiff.    A practice, to be binding, must be such and so known to the parties as to lead to the belief that the contract was made with reference to it.    But even were the evidence admitted, it would make quite as much for the plaintiff as for the defendants.    Prescott says that the consent is given by one or more of the directors; and in this instance there was the positive assent of one, the constructive consent of two, and the probable consent of even more.

Having decided these several questions in favor of the plaintiff, the only remaining inquiry is, to what amount are the defendants liable?

It is said in argument that the plaintiff cannot recover for the machinery placed in the building in 1848, because there is no count in the declaration under which it can be recovered.    But on looking into the declaration, we find it stated in the first count, that the defendants promised, on the 13th of June, 1848, that the policy might be continued

and might cover new machinery, wheels, drums and flume, according to the memorandum attached to the policy. The memorandum was in these words :

"*New England Mutual F. I. Company.* *Concord, June* 13, 1848. An additional representation having been received this day, and attached to the original application of D. G. Goodall, agent, No. 2323, the directors consent to the continuance of this policy, and may cover new machinery, wheels, drums and flume.

J. E. LANG, Secretary."

" Affix this to your policy."

There is no specific independent count for a recovery for the loss of the new machinery, but the whole is set forth in one count as upon one policy. The memorandum being attached to the policy in the manner in which it was, we see no objection in declaring as was done by the plaintiff. At all events, we think the declaration sufficient after verdict.

It is further said that there is no contract of insurance in regard to this machinery, in conformity to the charter and by-laws of the corporation. This raises the question whether the memorandum which is affixed to the policy can or not be regarded as a contract on the part of the defendants to make an insurance on this machinery.

The memorandum is a certificate under the hand of Lang, the secretary. The genuineness of the paper is not called in question, nor is any evidence offered to show that it does not truly state the facts. It must therefore be regarded as at least *prima facie* evidence of the statements it contains. These are, that an *addi*tional representation or application had been made by the plaintiff, and that the directors consented to the continuance of the policy, and that it might cover new machinery, wheels, drums and flume.

A policy is but the evidence of a contract of insurance. The risk commences from the time of the approval of the

Goodall *v.* New England Fire Ins. Co.

application and the payment or security of the premium. The policy usually bears date on the day of the approval or date of the application. In this case the application and policy are of the same date. But after the approval of the application and the payment or security of the premium, the party is insured and can recover for his loss, though no policy may have been made out. And this memorandum is competent evidence to show that the defendants contracted to insure and did insure the new machinery, wheels, drums and flume.

But further, the issuing of this certificate or memorandum is sanctioned by the by-laws of the company. By the fourth section it is provided that the directors may, in their discretion, grant certificates of insurance before the papers are formally made out.

The new machinery, then, must be considered as covered by the contract of the defendants; so that we again come to the question, to what amount are the defendants liable ?

There was insured on the building and fixed machinery, at the time of the fire, in both companies, the sum of sixteen hundred dollars, viz : one thousand dollars in the New England company and six hundred in the Union. This appears from an examination of the applications and policies in both companies. The defendants, by the fourth section of their charter, could insure only to the amount of two-thirds of the value of the property insured. The charter formed a part of the policy, and both parties are therefore governed by it. The jury have found the value of the building and fixed machinery at the time of the loss, to be nineteen hundred and seventy dollars and fifty-four cents. And it is at the time of the loss that the valuation must be made in a policy of this kind. It is not a valued policy. Two-thirds of the value found by the jury is thirteen hundred and thirteen dollars and seventy cents ; of course more than sufficient to make the thousand dollars insured by the defendants on that property. They would then be

liable for the thousand dollars, were it not for the insurance in the Union company. But, in case of a double insurance, the defendants were liable for a ratable proportion only of the loss sustained. This is provided for by the eleventh article of the by-laws. Consequently they were liable for ten sixteenths of thirteen hundred and thirteen dollars and seventy cents, which is eight hundred and twenty-one dol-lars.

On the movable machinery the defendants insured one thousand dollars and the Union company two hundred, being twelve hundred in all. The jury have found the value of this to be two thousand and sixty-one dollars. Applying the same principles as in the case of the building and fixed machinery, and two thirds of two thousand and sixty-one dollars are thirteen hundred and seventy-four dollars; being one hundred and seventy-four dollars more than the whole amount insured upon the movable machinery in both companies. Consequently the defendants are liable for the full amount insured by them on the movable machinery. Putting the two sums together, the eight hundred and twenty-one dollars, the amount due for the loss of the building and fixed machinery, and the one thousand for the loss of the movable machinery, and they amount to eighteen hundred and twenty-one dollars. On this sum let interest be cast from the expiration of three months after notice of the loss, according to the provisions of the charter, and after amending the verdict to conform thereto, as provided in the transfer, let there be

*Judgment on the verdict.*