## SANDERS *v.* HILLSBOROUGH INSURANCE COMPANY.

The provision in the charter of an insurance company which limits a suit on the policy to the county where the company is located, pertains merely to the remedy, and may be changed by a general law upon the subject.

Where the declaration recited a policy made with S., C., M. & B., under the name of S. and others, and the policy offered in evidence was with S. and others, without mentioning the names of C., M. & B., and there was evidence tending to show that C., M. & B. were jointly interested with S. in the property insured, and were the persons intended by the term "others," it was held that there was no variance.

Where, after an insurance was effected by "S. and others," the property was sold to W., who at the same time mortgaged it back to S., to secure debts due to him and to C. & M., of which notice was given to the company, who indorsed upon the

policy a consent that it should remain in force and not be avoided by the sale, which consent was signed by the president and secretary;—*Held*, that the policy was not avoided by the sale, but that a suit might be maintained by S. for the benefit of himself and C. & M., and also that the president and secretary who had given such consent, at the company place of business, were to be presumed to have authority to do the act, until the contrary was shown.

Where the interest of the plaintiff was that of a mortgagee, it was *held*, that he was not limited to the recovery of two thirds of the mortgage interest, by the stipulation that the recovery should not exceed two thirds the value of the property, but was entitled to the whole sum insured, if it did not exceed his mortgage interest, nor two thirds the actual value of the property.

Assumpsit by Samuel W. Sanders against the Hillsborough Mutual Fire Insurance Company, upon a policy of insurance in the company of the defendants, dated January 9, 1860, insuring the press, paper, type and apparatus for printing, belonging to Samuel W. Sanders and others, situated in Laconia, in said county, for one year from date. The policy, purporting to be signed by Francis P. Fitch as president, and David Russell, secretary of the company, embracing the property aforesaid, together with the by-laws of the company and the act of incorporation, constitute a part of the case, and also the plaintiff's writ and declaration, and the notes and mortgages hereinafter mentioned.

It appeared in evidence that one R. C. Stevens originally owned a printing establishment (part of the property insured) in Laconia, which he sold to the plaintiff and to Woodbury Melcher, and John T. Coffin, deceased, for $321, the three purchasers being equally and jointly interested in the purchase; that afterward Edwin Bartholomew, of Manchester, made material additions to the aforesaid establishment had of Stevens, namely, a rotary press, job and fancy type, embracing a number of printers' cases, &c., and that the plaintiff advanced to Bartholomew money to purchase said type, &c., and that said Bartholomew went into possession of the printing establishment, and printed a newspaper for some time; and subsequently, and prior to the execution of this policy, namely, on the first day of December, 1859, he executed his mortgage of said printing material to the plaintiff, to secure two promissory notes, one for $84.45, on demand, the other for $78.55, in sixty days from date, both payable to the plaintiff, or order, with interest. The plaintiff admitted that John T. Coffin was the owner of the lesser note, and that the plaintiff owned the other, and that Coffin had told him to manage his note, and secure it and get the pay for him; that Melcher told him to sell the property, and pay the debt where he was held.

At the time the application was made for insurance, one Daniel E. Smith was agent for the company, and he, before the insurance, made a personal examination of the property; all the property insured was in two rooms, and the plaintiff made a full statement to said Smith as agent, of the ownership of the property, and signed the application for insurance (which was not produced on trial) in behalf of himself and those in interest. Bartholomew was present at that time in the printing office; he informed Melcher and Coffin from time to time of what he did do, and in

behalf of those in interest he executed a note, &c., to the company.

It also appeared in evidence that one Bradstreet Wiggin had a prior mortgage on said property, as security for a $125 note, and that the plaintiff and Coffin had verbally become liable to him for the amount of his claim, and had taken no written assignment of his interest in the mortgage; that on the 28th of March, 1860, Benjamin F. Wallace became the purchaser of the whole establishment at the price of $1500, the value of the property being estimated at $1200, and the good will of the establishment was called in the trade equal to $300; that there was paid down by Wallace, in part discharge of the contract, to said Bartholomew, for his interest in the property, the sum of $800; that on the same day the deed of mortgage from said Wallace to the plaintiff was executed, purporting to re-convey the property sold to him, and insured, to secure the sum of $700, which was divided into four notes, the first of which was for $125, and intended to be as indemnity for the aforesaid Wiggin claim. The plaintiff testified that he gave to Wallace his personal obligation to make the title good to Wallace of all said property sold to him; that Bartholomew was present, and joined in this conveyance to Wallace; that immediately after the execution of the mortgage by Wallace to himself, the plaintiff says on the fourth day of April, 1860, he sent by mail his original policy of insurance, together with a notice in writing, signed by himself, to the company's place of business, at Amherst, and received the same policy back by mail, with an indorsement written as follows:

"Hillsborough Mutual Fire Insurance Company, }
        Amherst, April 5, 1860. }

"The directors consent that the within policy remain in force, and shall not be avoided in consequence of the sale to B. F. Wallace, as stated in a notice this day received."

Signed,          "D. RUSSELL, *Sec.*
              FRANCIS P. FITCH, *Pres't.*"

The plaintiff stated that, at the time of the insurance, April 5, 1850, his interest in the property insured was, first, for himself:

| | |
|---|---|
| One third of $321 and interest, | $107.00 |
| The note in the Bartholomew mortgage, and interest, | 84.45 |
| One half of the Wiggin debt, and interest, | 62.50 |
| | $253.99 |

That he represented in his own name, for Melcher, one third of $321, with interest,          $107.00
  Also, for Coffin, one third of $321, with interest,          107.00
  The lesser note in the Bartholomew mortgage,          78.54
  And one half of the Wiggin debt,          62.50
and also said that there was a balance on account, due from Bartholomew to him, so that, by adding interest to the aforesaid sums, the whole was, with interest,          $700.00

It appeared in evidence that nearly all the property covered by the insurance was destroyed by accidental fire on the 21st of November, 1860; that due notice of the loss by fire was given by letter to the president and secretary of said company, on the 23d day of November, 1860; that on the 26th of the same November, Charles Richardson, Esq., who, the plaintiff said, represented himself to be a director of the defendant corporation, came to Laconia to investigate and adjust the loss of the insured; that a schedule of all the property destroyed and insured was duly made out and furnished to said Richardson; that said Richardson returned with the schedule, saying they did not require any other statement of the loss; that on the 28th of December, 1860, he brought it back, and refused to pay the whole amount covered by policy. Richardson said the company were not satisfied to pay the full loss.

The plaintiff testified that the amount of materials destroyed by fire, as insured, was worth then $1200.

Before there was any general appearance by the defendants on the docket, the defendants moved to dismiss the action, as being improperly brought in the wrong county. This motion was overruled, and the defendants excepted.

Other exceptions were duly made to the admission of the plaintiff's evidence in the progress of the trial, and the rulings of the court, which were reserved for future consideration, numbered from 1 to 9.

A verdict was taken, by consent, for the plaintiff, for the whole amount covered by the policy, subject to be set aside, and a new trial granted, as the whole court should determine.

*Hibbard,* and *Eastman,* for the defendants.

*Blair, Stevens & Vaughan,* for the plaintiffs.

BELLOWS, J.    The law of July 7, 1849 (ch. 844), authorizes any person who has sustained loss, by fire, of buildings or other property, insured in any insurance company in this State, to bring his action in any county in which he resides; and this, we think, must control an existing limitation in the charter of the defendant corporation, although in it no right to amend, alter, or repeal, was expressly reserved. By this provision of the general law the existing rights and duties of the corporation were not affected; nothing being done but to change the form and mode of the remedy, without impairing the obligation of the contract, and therefore not within the prohibition of the federal constitution. *Boston, Concord & Montreal Railroad* v. *The State,* 32 N. H. 225; Ang. and Am. on Corp. 731, 732, and cases cited.

*Howard* v. *Insurance Company,* 13 B. Mon. 282, is directly in point, and upon a question like the one before us; nor is it affected by the 23d article of our Bill of Rights. *Rich* v. *Flanders,* 39 N. H. 309; see, also, *Amesbury* v. *Bowditch Insurance Company,* 6 Gray 596, and *Hall* v. *People's Insurance Company,* 6 Gray 185, where it is held that this provision relates merely to the remedy.

·But it is objected that there is a variance between the policy described and the one offered in evidence, in this, that the declaration sets out a policy which recites that "the plaintiff and one Coffin, Melcher, and Bartholomew, under the name of Samuel W. Sanders and others, had become members of said company," whereas those persons are in fact not mentioned in the policy offered in proof. And this is undoubtedly true, unless they can be considered as embraced under the term "Samuel W. Sanders and others." Upon that point it appears that at the time of the original insurance the title to the property was in those four persons, and if they were shown to be the persons intended to be embraced under the name of Samuel W. Sanders and others, the statement of the recital was correct, it being alleged that under that name they were stated to be members. In the case of a partnership acting under a firm name, and so describing the members in the policy, such a description in the declaration would, we think, be correct, and the same principle must apply to this case.

The question then is, whether it sufficiently appears that these were the persons intended, or whether the jury could legally have so found; and we think the evidence tended to prove that fact, especially as no other persons appear to have had any interest in the property. In *Willis* v. *Barrett*, 2 Stark. 29, the plaintiff declared on a note payable to her by the name of Willis; and upon showing that she was the person really intended, she was allowed to recover. In such case there was no variance, for the note was declared on according to its legal effect. Stark. Ev., Part 4, 1579, and cases cited; 1 Ch. Pl. 306; *Bass* v. *Clive*, 4 M. & S. 13. The cases of declarations upon promissory notes by or to a partnership, where the promise is alleged to be by or to the plaintiffs or defendants, under the name and style of the firm, are familiar examples, requiring proof of the persons who compose such firms. 2 Chit. Pl. 116; *Gordon* v. *Austin*, 4 T. R. 611.

It is further urged by the defendants, that the sale of the property to Wallace, on the 28th day of March, 1860, avoids the policy, notwithstanding the property was immediately re-conveyed by Wallace to the plaintiff by mortgage. But waiving, for the present, the consideration of this question, let us examine into the effect of the assent of the corporation. It appears that when the policy was originally issued, the property was owned by the plaintiff and others, including Bartholomew, who was in possession of it, and by the transaction of the 28th of March the interest of Bartholomew was transferred to Wallace, the plaintiff, Coffin and Melcher at the same time conveying all their interest to Wallace, and taking back a mortgage to secure the payment of the various sums for which it was before held; that soon after, the plaintiff sent the policy to the defendants, with a notice of this transaction, and received back the policy with an indorsement thereon, dated April 5, 1860, and signed by the president and secretary of the company, to the effect "that the directors consent that the within policy shall remain in force, and shall not be avoided in consequence of the sale to B. F. Wallace, as stated in a notice this day received." It will be seen

that no provision is made, either in the charter or by-laws, for an assignment of a policy in case of the sale of merchandise, &c., insured, or that the policy shall be made void by such sale; and therefore the question is to be settled by the principles of the common law. In the case of marine policies it is held that on a sale of the property insured, and a transfer of the policy, an action may be maintained for a subsequent loss, for the benefit of the purchaser, in the name of the assignor, although no assent of the underwriter is shown. *Powles* v. *Innes*, 11 M. & W. 10, and cases cited; Ang. on Ins., sec. 199; 1 Phil. on Ins. 34; 2 Am. L. C. 611, 112, and numerous cases cited; *Wakefield* v. *Martin*, 3 Mass. 558; *Earl* v. *Shaw*, 1 Johns. Ca. 313; *Carter* v. *Insurance Company*, 1 Johns. Ch. 462. It is even held that a delivery over of the policy to the purchaser, or an understanding that it shall be kept alive for his benefit, is sufficient, without a formal transfer. *Powles* v. *Innes*, 11 M. & W. 10. In respect to insurances against fire, notice and assent is held to be necessary. Ang. on Ins., secs. 193, 199; *Lynch* v. *Dalzell*, 3 Brown. Parl. Cases 479; *Saddlers' Company* v. *Badcock*, 2 Atkyns 554. But with such notice and assent the purchaser may sue for a subsequent loss, in the name of the assignor, who will have no power to defeat or avoid the insurance by any subsequent act. *Traders' Insurance Company* v. *Roberts*, 9 Wend. 404.

It has even been held that when an estate is sold, and the policy transferred to the purchaser, and upon notice to the insurer he assents to it, a new and original contract of indemnity arises to the assignee, which he may enforce by a suit in his own name. *Wilson* v. *Hill*, 3 Met. 66, *Shaw*, C. J.; and so is *Foster* v. *Equitable Fire Insurance Company*, 2 Gray 216. See, also, *Goodall* v. *Insurance Company*, 25 N. H. 169, where a subsequent agreement, that the policy should cover other property, was held good; and see *Wiggin* v. *Damrell*, 4 N. H. 69. In cases where, by the charter or by-laws of a mutual insurance company, provision is made for a transfer of the policy on a sale of the property insured, giving to the assignee all the rights before possessed by the assignor, a suit must be in the name of such assignee. *Rollins* v. *Insurance Company*, 25 N. H. 200.

In the case before us, however, neither the charter or by-laws contain any provision upon the subject, where the property insured is not real estate. Upon the principles of the common law, then, it would seem that the assent of the company, that this policy should remain in force and not be affected by the sale to Wallace, must give to the purchaser at least an equitable interest in it, as a contract of indemnity, and it is not material to inquire whether it is to be enforced as an original promise, made at the time of the assent, or not, because, in either case, the party plaintiff would be the same.

Our conclusion, then, is, that with notice to the defendants of the sale, and their assent that the contract of insurance should still subsist, the right to sue in the name of the plaintiff is not affected by the transfer. It is true there was, in this case, no formal assignment of the policy, nor was any required by the charter or by-laws, or by the rules of the common law. It was sufficient that the insurer had

notice of the change of interest, and the desire of the plaintiff to hold the policy as a subsisting insurance, and of course for the benefit of the three present parties in interest; and that this was assented to by the defendants. *Goodall* v. *Insurance Company*, 25 N. H. 169. Nor is there any thing in the exception that the assent was not the act of a majority of the directors, for the authority of the president and secretary must be presumed until the contrary appears. *Bank of Vergennes* v. *Warren*, 7 Hill 91; *Conover* v. *Insurance Company*, 3 Denio 254; and same case, 1 Comst. 290; *Goodall* v. *New-England Mutual Fire Insurance Company*, 25 N. H. 169; Ang. on Ins., sec. 217.

The conclusion we have reached is not in conflict with any views expressed in *Rollins* v. *Insurance Company*, before cited, which merely holds that the contract of insurance is not assignable, so that the assignee could maintain a suit in his own name, unless it be by virtue of some statute provision; and the same may be said in respect to the case of *Folsom* v. *Belknap Insurance Company*, 30 N. H. 231; and it will be perceived that these cases do not consider the effect of a promise to pay the assignee, especially where there is no provision in the charter or by-laws.

But it is urged that there was no proof of notice of the sale, or of a request that the policy might be continued in force to the plaintiff as mortgagee, as is alleged in the declaration. The verdict, however, was taken by consent, and we think that a jury might have found these facts upon the testimony reported, although it is stated in very general terms; yet it appears from the certificate of assent, as well as from explicit statements in the case, that such notice was given; and it might well be presumed that it included such statement of interest as would justify the giving of such assent; and, from the fact that the policy was so sent and indorsed, would properly be inferred a request for such assent.

It is said, also, that by their assent the company did not agree to make the policy good to Sanders alone, any more than to the rest of the parties interested. Upon that point the case is that the plaintiff alone held the legal interest in the mortgage, which was given, however, to secure the payment of moneys due to Coffin and Melcher, as well as to himself, and the assent might well be construed as available to the party who was represented to have the insurable interest. That it could not fairly be construed as a promise that it should stand good in respect to Bartholomew, who no longer had any interest, is quite clear; and we see no objection to regarding the assent as available to the plaintiff and such as were represented as interested with him, if any such there were; as in the case of a policy made to A. B., "for whom it may concern," or to A. B., "or whom it may concern." *Jefferson Insurance Company* v. *Cottreal*, 7 Wend. 72; *Cobb* v. *N. E. Mutual Fire Insurance Company*, 6 Gray 193. In these cases the contracts of insurance were made available to the persons beneficially intended in them, although suits were maintained in the names of the persons alone to whom the policies were made payable.

In accordance with these cases is *Goodall* v. *New-England Insur-*

*ance Company*, 25 N. H. 169, where it was held that an agent of the owners, to whom a policy was made as such agent, with a promise to pay him, might sue in his own name. In *Ward* v. *Ward*, 13 Mass. 539, the contract was with the plaintiff for whom it might concern, and the title was in the plaintiff and one Sanders, equally. The defendant urged that the suit should have been in the name of both, or that the plaintiff should recover a moiety only; but the court overruled both objections, and held the action well brought. See, also, *Copeland* v. *Insurance Company*, 6 Pick. 198.

So where a policy was made to the plaintiff, "or as agent," the vessel being in fact owned by the plaintiff and one Richardson, and the insurance being in fact for the benefit of both, the plaintiff was permitted to recover the whole sum for the use of himself and Richardson. *Davis* v. *Boardman*, 12 Mass. 80. It would seem, however, that in the case of an insurance effected by a broker or agent in his own name, "for whom it might concern," the suit may be either in his name or in the name of the person really intended, and for whose benefit the insurance was made. 2 Phil. on Ins. 593, and cases cited in the notes. Nor is this principle applied to contracts of insurance alone, but it extends to other contracts where the promise is made to the agent. *Doe* v. *Thompson*, 22 N. H. 217; Story on Agency, sec. 403; 1 Chit. Pl. 7, 8.

Applying these principles to a case where no change has been made by the charter or by-laws, the suit may be brought in the name of the person with whom the contract of insurance is made, although he is but an agent; or in the name of the party for whose benefit it was really intended; and it would seem to follow that if the policy is made in the names of two persons, in such way as to cover the whole interest, and at the same time the whole title is in one of them, he may maintain an action on the policy in his own name alone; and so it is laid down in 2 Phil. on Ins. 594.

If such be the law in respect to the original contract of insurance, no good reason is perceived for not applying the same rules to the subsequent assent to the continuance of a contract.

In the case before us the entire legal interest under the mortgage made by Wallace was in the plaintiff, all the notes secured by it being payable to him; and, upon the rules established by the authorities cited, the suit may be maintained in his name alone, and the assent of the defendants be regarded as enuring to his benefit, so far as to enable him to sue alone, even if it might be available also to Coffin and Melcher. If it were to be held that in a case like this, a member only of the company could sue, it is not contended that the plaintiff here is not such member. On the contrary, there is ground for urging that, on the facts stated, he and he alone is a member of the company; but, however this may be, no such objection appears to have been made.

The objection to the execution of the mortgage can not prevail, for however it might be as between the mortgagee and Wallace's creditors, it is good as between the parties. By the Revised Statutes (ch. 132) provision is made for the execution and recording of such mortgages, and section seven provides "that no such mortgage shall

be valid against any person except the mortgagor, his executors and administrators, unless possession is delivered, or the mortgage is sworn to and recorded in the manner herein prescribed." Under a similar statute, regulating the execution of conveyances of real estate, it has been decided that a deed with but one witness is sufficient to convey title as between the parties. *Hastings* v. *Cutler*, 24 N. H. 481.

The only remaining question is as to the rule of damages. The principles already announced entitle the plaintiff to recover the whole sum which the defendants are held to pay to any one on account of this loss; and the inquiry therefore is, what is that sum? The sum insured is $600, and for that a verdict was taken, by consent; and, for aught we can see, the jury might legally have found the plaintiff's interest as mortgagee to have been $700. The defendants contend that the plaintiff is limited by the contract to two thirds of that sum; but we do not so understand it,—the limitation being to two thirds of the actual value of the property at the time of the loss; and there being no claim that such value was not as much as $900, there is clearly nothing in the terms of the contract that will limit the damages to two thirds the amount of the insurable interest, or make that the rule; nor do we perceive any thing in the reason for the stipulation that would lead to such a conclusion. On the contrary, it is most manifest that the object of this provision was to leave uninsured one third part of the value of such property, as some security for the care and vigilance of the owner, and this is effectually accomplished by giving to the contract the plain and obvious construction. If the insurable interest was to be the guide, what should be done when it was equal to the full value of the property? or must it apply only when it would reduce the damages below two thirds its actual value? Again, what would be the rule when the mortgagor had effected insurance on the whole property, as he might do, having no interest in the insurance to the mortgagee, as is held in *Traders' Insurance Company* v. *Roberts*, 9 Wend. 404.

We think it quite clear that this exception can not avail the defendant, and there must be

*Judgment on the verdict.*