## Case No. 155.

### ALDRICH v. EQUITABLE SAFETY INS. CO.

[1 Woodb. & M. 272.][1]

Circuit Court, D. Massachusetts. May Term, 1846.

##### MARINE INSURANCE POLICY TO WHOM IT MAY CONCERN—INSURABLE INTEREST.

1. Where an insurance was effected by the owner of a vessel "on account of whom it may concern," "loss payable to the order of H.," who made the insurance and owned the vessel, and a consignee, in Europe, had advanced money to buy all the cargo in India, under a contract to be interested one half in the proceeds, and have the bill of lading of the cargo assigned to him for security, and the insurance to be made by the consignor on the vessel and half the cargo, to be deposited with the agent of the consignee in America, which was done except on freight instead of the vessel; the court held, that the consignee had an insurable interest in the policy, independent of any assignment; and could recover on it in his own name.

[Cited in Henshaw v. Mutual Safety Ins. Co., Case No. 6,387; The Sidney, 23 Fed. Rep. 93; The Samana Co. v. Hall, 55 Fed. Rep. 663.]

2. The vessel being lost on her way back, but the cargo saved and received in Europe afterwards by the consignee, the latter was allowed to recover so much of the loss, as was necessary to pay the balance due to him in the transaction.

3. The remainder of the loss, H., the consignor, having become bankrupt, was allowed to be retained by the insurance office, in discharge of the premium note, and other demands against H. unsatisfied, and not proved before the commissioner of bankruptcy, a clause existing in the policy allowing the detention of enough of all losses to pay what was coming to the office from the person entitled to it.

4. Nothing could thus be set off against the consignee, except what he owed in his own right, or in equity, viz., the premium note, in this case, by which he had been benefited.

5. Had the consignee claimed under the assignment, and not as a party originally concerned or interested in the insurance, the result might have been different.

[At law.] This was assumpsit [by William L. Aldrich and another against the Equitable Safety Insurance Company] on a policy of insurance, made December 17th, 1841, on the cargo of the ship Neponset, to the extent of $15,000, on one half thereof, from Bremen to the coast of Sumatra, and thence to a port of discharge in Europe, with this provision, viz.: "The balance of this policy to attach to freight after covering property." The insurance was made to Mark Healy "on account of whom it concerns," "loss payable to the order of M. Healy." The plaintiffs claimed, as possessing an insurable interest in the cargo and freight under the following circumstances, and that the insurance was made with a view to cover it. Thus, on the 17th of November, 1841, Mark Healy, being owner of the above ship, and she being at Bremen to obtain employ-

[1][Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

ment, in charge of her captain, one Joseph Powell, a contract was entered into between him and the plaintiffs, that the latter should furnish $23,000 in specie, and four boxes of opium for the vessel to proceed to Sumatra for the purchase of pepper, and to return with it to Europe, the adventure to be on the joint account of Healy and the plaintiffs. It was further stipulated, that the port charges should be defrayed out of this money furnished by the defendants, and the bills of lading of the cargo be consigned to them for sale, they paying for freight of half thereof, one cent and a half per pound, and that the plaintiffs should remain in advance to Healy for half the specie on the same terms as in the last voyage on their joint account. Healy was left to make insurance, and in the event of making it, the policy for the vessel and Healy's half of the cargo, was to be deposited in the hands of Messrs. N. & P., who were agents of the plaintiffs. A loss of the vessel took place about March, 1843, at the Island of Mauritius, but the cargo was not injured over five per cent., and was obliged to be reshipped and carried to Europe in another vessel, and the freight therefor was paid by the plaintiffs; the Neponset losing her freight by the loss of the vessel before reaching Europe. Though the arrangement in the original agreement was for an insurance on the cargo and vessel, Healy made it on the cargo and freight, and lodged it with Messrs. N. & P. for the plaintiffs, and it was accepted by them. The whole loss for which the defendants are liable, it is admitted, $3000, being about $1680 and interest, since April, 1843, for general average chargeable to the cargo, and about $1681 on account of freight. But it is contended by them, that Healy in this, insured only his own property; and the plaintiffs had no insurable interest therein; or if they had, that the policy was assigned to them by Healy without the consent of the office, and hence could not be recovered on by them, under an express provision in the following words: "It is also agreed that this policy shall be void in case of its being assigned, transferred, or pledged, without the previous consent in writing of the insurers." It was further agreed in the policy as follows: "And in case of loss, to be paid in sixty days after proof of loss and proof of interest in the said property, the amount of the note given for the premium, if unpaid, and all sums coming due being first paid or secured to the satisfaction of the said company, they discounting interest for anticipating payment." The defendants claimed under this, to set off not only the premium note of $526, which remained unpaid, but other large sums, due from said Healy to the insurance office, amounting in all to $5476. Healy had failed, since the insurance, and had taken the benefit of the bankrupt act; but neither party

now claiming proved their debts under the bankruptcy. The amount due to the plaintiffs as the balance of their account with Healy, after selling the cargo, was, in August, 1843, at the time the business closed, $1727; for which, and interest since they commenced this action, April 9th, 1844, they seek to be indemnified. The case was tried here in April, 1846. at an adjourned term, and a verdict taken by agreement for the plaintiff in blank, to be filled up with such sum as the court, on examination, should deem proper, if the plaintiff was in law entitled to recover. Otherwise, the verdict was to be set aside, and a general verdict to be entered for the defendants.

Phillips, for plaintiffs.
Fiske, for defendants.

Before WOODBURY, Circuit Justice, and SPRAGUE, District Judge.

WOODBURY, Circuit Justice. Most of the important facts in this case are embodied in the statement of it, and on these I shall now proceed to submit briefly my views of the law. The plaintiffs seem to me to have possessed an insurable interest in the cargo and freight, which are covered by this policy. They had agreed to advance $23,000 on account of the cargo and charges, and did do it, so as to render Healy indebted to them to the extent of $11,800, and interest thereon. How were they to be secured or paid for this? Clearly in the first instance by an insurance of the cargo and the ship, with a deposit for them of the policy with their agent, and a consignment to them of the bill. of lading of the return cargo. This was the original agreement; but the insurance was altered to the freight, instead of the cargo; and the amount made so large as to cover both, and accepted by the plaintiff. Thus, virtually, the plaintiffs, so far as lenders of the $11,800, had for security a stipulation to consign the bills of lading of the cargo to them, and their own indebtedness to Healy of the freight of their half of the cargo. This would be an ample indemnity, unless the return cargo should, contrary to any fair expectation, sell for less than its cost, and indeed less, to the extent of all the freight on one half of the whole cargo. But should the cargo be lost, or the freight, they held as security the insurance by Healy to the amount of all his share in the cargo, and of his expected freight, an indemnity quite safe against any ordinary contingencies, and more than sufficient in this case, as the event will show, if the plaintiff recovers. The plaintiffs stood, then, in the position of mortgagees, or trustees, or consignees of the half of the cargo and the freight thereon, that belonged to Healy, in order to secure them for the advances they had made in behalf of Healy. This was an insurable interest, whether looking at it in law or equity. 1 Phil. Ins. 107, 114; 2 Phil. Ins. 601; 1 Mason, 127, [Seamans v. Loring, Case No. 12,583;] [Traders' Ins. Co. v. Robert,] 9 Wend. 404; [Ex parte Yallop,] 15 Ves. 60, and other cases cited in Phillips.

Was the fact of an interest in others than Healy as owner and mortgagor, or consignor of the cargo and freight, disclosed in the policy, sufficiently, to entitle others to recover? I think it was. The very terms of the policy being "on account of whom it may concern," distinctly apprized the office, that Healy intended to secure by it any interests of others as well as his own. He was principal for himself as mortgagor, and agent for the plaintiffs as mortgagees. 2 Phil. Ins. 153. He acted with express and previous wishes and authority for them as well as himself, and not without either, as in Foster v. United States Ins. Co., 11 Pick. 85. The plaintiffs also accepted or ratified the insurance after it was made, by taking it through their agent in this country. Under the form of expression used then, with the accompanying facts, no doubt exists that the plaintiffs are entitled to recover on their interest to the extent of their loss, without any assignment of the policy to them in the sense contemplated in the clause of it before quoted. The action can well be brought as now, or in the name of the person who appears on the policy to insure for others, and might be prosecuted for others in his name. Farrow v. Commonwealth Ins. Co., 18 Pick. 53; [Jefferson Ins. Co. v. Cotheal,] 7 Wend. 82; [Pigott v. Thompson,] 3 Bos. & P. 149; [Sargent v. Morris,] 3 Barn. & Ald. 281; Hurlbert v. Pacific Ins. Co., [Case No. 6,919.] Their interest attached by the insurance itself, and not by any subsequent assignment; and the indorsement by Healy, and the deposit of the policy with their agent, were merely to authorize the payment of any loss to them, as originally interested, and in conformity with the provision in the policy requiring them to be made on his order, and also in compliance with the original agreement between him and the plaintiffs, that the policy should be deposited with their agent. Wiggin v. American Ins. Co., 18 Pick. 158. Their rights, then, having commenced with the policy itself, and arising in fact under the original insurance, as set out in the declaration, and not under any assignment of it, the case is not open to the objection, that it has been assigned to them subsequently, and without the knowledge or assent of the office, and is, therefore, void. These circumstances settle, also, the other objection concerning the set-off: One object of the provision against an after assignment without the consent of the office, doubtless, was to protect its interests by means of retaining the power, in case of a loss, to set off any demands the office possessed against the original holder of the policy. [Wiggin v. American Ins. Co.,] 18 Pick. 158. Here they have retained that power, so far as regards Healy and his original interests whether as

mortgagor, or cestui que trust or consignor in the property insured. But they have not retained, because they never possessed, any such power against the mortgagee or trustee, beyond his own indebtedness, which was nothing in law or equity but the premium on the property. As to that, such would have been the case, even if the suit had been in the name of Healy for the plaintiffs. Hurlbert v. Pacific Ins. Co., [Case No. 6,919.] It is well settled, that a demand, held in autre droit, cannot be set off, nor one against a person suing in autre droit. Bull. N. P. 179; [Hammonds v. Barclay,] 2 East, 230, 235; Tidd, Pr. 605, and cases cited; [French v. Andrade,] 6 Term R. 582; [Slipper v. Stidstone,] 5 Term R. 493; 5 Mason, 205, [Greene v. Darling, Case No. 5,765.] The defendants, therefore, can set off against the plaintiffs, being originally parties in interest by virtue of what appears on the face of the policy, only what is due from them in law and equity, and not what is due from other persons alone. Indeed, if an insurer knows that the broker is insuring for a third person, he cannot set off a debt due from the broker. Gordon v. Church, 2 Caines, 299. The policy in that case was in the name of the broker, and the name of the principal was not disclosed. But "brokers" was inserted in the margin; and it was proved by parol, or admitted that the principals were well known. See also, Hurlbert v. Pacific Ins. Co., [Case No. 6,919.]

There is another question as to what should be done about the mode of deducting the premium note given for this particular insurance. Healy promised to pay it; but not having done so, it should be charged on the sum going to him after paying to the plaintiffs their dues. If there be not enough of that, it, of course, as before suggested, ought to be settled by those who derive the benefits from it, (who in this instance are the plaintiffs to the extent of the balance of their account against Healy.) There is no necessity, here, however, to apportion it, and charge a part to them and the residue to Healy; because the claim of the plaintiffs, though losers, being only a part of what is due on the loss, leaves the residue, being more than enough to pay the premium, for the mortgagor, and thus open to any set-off for this or any other premiums due from him to the defendants.

In many policies there is a special provision to deduct the premium from any loss; and, indeed, on re-examination, such is evidently the design in the present case, independent of the equitable reasons for such a course. Thus, in paying averages, it is to be done, "having been paid the consideration for this insurance by the assured," &c., and in paying a loss, "the amount of the note given for the premium, if unpaid," &c., "being first deducted."

There is another view presented, as to whether the plaintiffs should recover all the loss, and account for the balance, after deducting their debt, or recover only the amount of their debt. My opinion on this is, that the company should be permitted to retain and set off against Healy or his assignees, so far as he remained interested in the property insured as mortgagor, all which remains covered by the loss after paying the mortgagee, rather than that the plaintiffs should be allowed to recover the whole and pay over the balance left, after they are satisfied, to Healy's assignees. This does exact justice to all concerned—carries out the original intent, as well as the established law on set-offs generally, (Gordon v. Church, 2 Caines, 299,) and, at the same time, protects the office in the full enjoyment of their original lien on Healy's interests in any loss, so as to hold it subject to all their claims against him under a set-off of them, when the loss is called for, instead of driving them into a bankrupt court for merely a pro rata share with other creditors, who had not, like them, any specific lien on the balance, after paying the mortgagees. Hurlbert v. Pacific Ins. Co., [Case No. 6,919.] But though in this case the plaintiffs would be liable for the premium on this particular insurance, when not paid by Healy, who gave his note for it, and agreed to pay it; yet as there are funds enough left, belonging to Healy, for the loss, to pay this premium and all due to the plaintiffs, it ought to be charged on those funds. Whether this be done by deducting it from the plaintiffs' balance, and then recharging it as so much more due to them from Healy, or by leaving it to be paid out of Healy's share, is immaterial. Let the computations be made on these principles, and the blank in the verdict filled up for only the sum due the plaintiffs, leaving the residue to be held by the office towards their debts against Healy.