Mead *v.* Mercantile Mutual Insurance Company.

———————◆———————

## MEAD *vs.* THE MERCANTILE MUTUAL INSURANCE COMPANY.

The contract of insurance is a mere contract of indemnity to the assured, against such loss as he may actually sustain, by reason of any of the perils insured against.

Upon an abandonment and payment, or, in case of a partial loss, adjustment and payment, the underwriters are, in equity, entitled to subrogation to all the rights and causes of action which the insured has against other persons, on account of the loss.

The owner is the person who stands to the whole risk, and must suffer the whole loss; unless he engages another to bear it in the event of a loss.

When another engages to be at that risk for the owner, then the owner and the insurer, as to the ownership of the property and the risk incident to it, are in law considered as one person. Hence each is regarded as beneficially interested in any indemnity which can be exacted from others by reason of the loss.

So, when the owner has been paid his loss, in full, by his insurer, there is a

Mead *v.* Mercantile Mutual Insurance Company.

manifest equity in transferring to such insurer any right to indemnity which the owner holds for the common benefit of himself and the insurer.

When a shipper has provided himself with two sources of indemnity, in case the cargo is destroyed or injured during the transportation — one from the carrier, arising out of the operation of the law, the other from an insurance company by virtue of a contract of insurance — the liability of the carrier is, in legal effect, first and principal, and that of the insurer secondary, not in order of time, but in order of ultimate liability.

The shipper may apply, in the first instance, to whichever of these parties he pleases. If he applies to the carrier, and receives entire indemnity, he has no right to call on the insurer. If he applies to the insurer, and receives his loss, he holds the claim against the carrier in trust for the benefit of the insurer.

A bill of lading does not suppose a policy of insurance, but a policy of insurance does presuppose that there is a liability on the part of the carrier.

N., L. & Co. being under a contract with the owner of a cargo of grain, to transport the same from Buffalo to New York, free from any damage that might happen from the perils of the trip; *held* that they had an insurable interest in the property; and that having caused the same to be insured, by a contract making the loss, if any, "payable to N., L. & Co., or order," such contract could not, by construction, or by the aid of parol proof, be enlarged in its operation so as to make it cover the risks of other insurers or persons interested.

THIS action was tried at the Erie county circuit, by and before Justice BARKER and a jury, in February, 1877.

Upon the direction of the court, a verdict was rendered for the plaintiff for the sum of $142, that being the only sum claimed by the plaintiff. Upon receiving the verdict, the court, on its own motion, ordered the case to stand for further consideration. At a subsequent day, the counsel for the respective parties handed in written arguments.

*Edwin Thayer*, for the plaintiff.

*George B. Hibbard*, for the defendant.

BARKER, J. The case is this: Mr. Henry C. Winslow was the owner of eight thousand bushels of corn in store at Buffalo, which he desired to be transported to

another market—the city of New York. Nelson, Lotheridge & Co., also of Buffalo, commission merchants and forwarders, agreed to carry the same for the owner, at a fixed price per bushel, by the canal boat James A. Allen. The contract between these parties was reduced to writing, and took the form of an ordinary bill of lading, signed by both of these parties, in which the boat was named on which the corn was to be carried, and the consignees, the number of bushels in the cargo, rate &c., with the conditions of the carriage and bargain were fully and at large set forth. Nelson, Lotheridge & Co. were not the owners of the boat named; nor were they in command of her. The plaintiff in this action was owner and master of the boat, and procured Nelson, Lotheridge & Co., as his agents, to receive for him a cargo, they charging him a commission.

Upon receiving the cargo, the plaintiff, as owner and master of the boat, gave his bill of lading, in all essential particulars like the one issued by Nelson, Lotheridge & Co. to the owner; except that in this bill of lading it was stated that the shipment was "*by Nelson, Lotheridge & Co. as agents and forwarders.*" In the bill of lading firstly described, the shipment is stated to be by "*Henry C. Winslow,*" who was, as has been already stated, the owner of the grain.

The defendant, upon the application of Nelson, Lotheridge & Co., insured the cargo, they being mentioned as the parties insured.

While on her trip, the boat was injured, being run into by the negligence of another party, and a small loss happened to the cargo.

Each of the bills of lading contained this clause: "All damage caused by the boat or carrier, or deficiency in the cargo, from quantity as herein specified, to be paid by the carrier, and deducted from the freight."

Upon the arrival of the boat in New York, the damages to the cargo were ascertained and deducted from

the carrier's freight, as stipulated in the bill of lading, and the balance adjusted and paid to the plaintiff, the owner and master of the boat. The assured, Nelson, Lotheridge & Co., transferred to the plaintiff all claims for loss against the defendant arising out of the contract of insurance ; and the defendant neglecting and refusing to pay the same, this action was brought.

Upon the trial, the damages were agreed upon at $142.

Against the plaintiff's right to recover from the defendant this loss, it is urged as a defence, that the plaintiff, as carrier, is the party primarily liable to the owner and shipper, for any loss that he has sustained. That the plaintiff having paid the entire loss to the shipper, he, as the party assured, after such payment, had no cause of action, on the contract of insurance, and therefore the plaintiff got nothing by the assignment from the insured. That the equitable doctrine of subrogation is justly applicable to the case, and being applied, will necessarily defeat a recovery.

To the case, as made upon the trial, the position is a complete legal defence, and should have been so held upon the trial, and the motion for a nonsuit sustained.

The contract of insurance is a mere contract of indemnity to the assured against such loss as he may actually sustain, by reason of any of the perils insured against. Upon an abandonment and payment, or, in case of a partial loss, adjustment and payment, in equity the underwriters are entitled to subrogation to all the rights and causes of action which the insured has against other persons, on account of the loss. The owner is the person who stands to the whole risk, and must suffer the whole loss ; unless he engages another to bear it in the event of a loss. When another engages to be at that risk for the owner, then the owner and the insurer, as to the ownership of the property, and the risk incident to it, are in law considered as one person. Upon this idea, each is re-

garded as beneficially interested in any indemnity which can be exacted from others by reason of the loss. So when the owner has been paid his loss, in full, by his insurer, there is a manifest equity in transferring to such insurer any right to indemnity which the owner holds for the common benefit of himself and the insurer.

In the case before the court, the shipper had provided himself with two sources of indemnity, in case the cargo was destroyed or injured during the transportation—one from the carrier, arising out of the operation of the law, the other from the insurance company in *virtue* of its contract with it. The liability of the carrier is in legal effect, first and principal, and that of the insurer secondary, not in order of time, but in order of ultimate liability.

The shipper may apply in the first instance to whichever of these parties he pleases. If to the carrier, as he has in fact, in this case, and received entire indemnity, he has no right to call on the insurer. If he applies to the insurer and receives his loss, he holds the claim against the carrier in trust for the benefit of the insurer.

The carrier stands in no privity with the assured as to the contract of insurance ; while the underwriters are in privity with the assured as to the bill of lading.

The bill of lading does not suppose a policy of insurance, but a policy of insurance does presuppose that there is a liability on the part of the carrier. (*The Atlantic Ins. Co.* v. *Storrow*, 5 *Paige*, 285. *Hart* v. *The Western R. R. Co.*, 13 *Metcalf*, 99. *Hall & Long* v. *Railroad Companies*, 13 *Wallace*, 367.)

The plaintiff does not really controvert these well established principles, but seeks to avoid their application to the case now in hand, on the ground that the facts make a case exceptional to the general rule of the right to subrogation.

But the plaintiff's rights must be determined in the

case as made, and as appears on the face of the contract of insurance and the bills of lading; for the plaintiff's offer to prove that the insurance was made for the benefit of the carrier, and that he furnished the money to pay the insurer, and that Nelson, Lotheridge & Co. were his agents in effecting the insurance, was overruled, on the defendant's making an objection to such proof. Of course, the correctness of such ruling is not now directly up. Nevertheless, I have considered it, as there must be a new trial; when the point will again arise.

The plaintiff stands on the ground that the entire contract of insurance is expressed on the face of the certificate read in evidence. That it was a consummated agreement in fact. It was so held on the trial, and is so treated here; as I have reached the conclusion to grant a new trial on other grounds. It is a contract in terms between the owner and Nelson, Lotheridge & Co. The latter, being under an agreement with the owner of the cargo to transport the same to New York, free from damage that might happen from the perils of the trip, they had an insurable interest in the property. By no rule of law with which I am familiar can the terms of this contract be enlarged, by parol proof, so as to make it cover the risks of other insurers. The insurance company has a right to an interpretation of the contract as it is written, and to stand by it as the parties thereto made it. There are no words used, or phrases adopted, that by usage and custom can be taken as indicating an intention by either party to cover the risks of other persons interested in the preservation of the property. Here the contract in terms states that Nelson, Lotheridge & Co. have insured the cargo, and in case of loss, the same "*is payable to Nelson, Lotheridge & Co. or order hereon.*"

If by construction, or by the aid of parol proof, this contract can be enlarged in its operation, then it is diffi-

cult to see how an insurer can limit his liability to an indemnity of one of the persons interested in the thing insured.

Upon an examination of the cases, bearing upon this question, it will be found that all of them hold that where it appears upon the face of the policy, by a fair interpretation, that there was an intention to insure the owner, then extrinsic evidence may be given to show who such owner is, and the nature and extent of his interest. But when it appears, on the face of the contract, that none other than the person named as the party assured was intended, then it is limited in its effect and operation; and should it, upon an inquiry, turn out that the party sought to be assured has no interest in the property described, it will be held void, as a wager policy. (*Angell on Insurance*, §§ 79, 80, 81, 82. *DeBolle* v. *Pennsylvania Ins. Co.*, 4 *Wharton*, 68. *Mellenberger* v. *Beacon*, 9 *Barr* (*Pa.*), 198. *Routh* v. *Thompson*, 13 *East*, 274; *S. C.*, 11 *id.*, 428. *Stilwell* v. *Staples*, 19 *N. Y.*, 401. *Waring* v. *Indemnity Ins. Co.*, 45 *id.*, 606.)

In instances where the property is described as "held in trust," "on commission," and in kindred terms, in a policy running to an agent, factor or the like, it is held an action is given to the owner, and he has a right to take the place of the insured; he may adopt the contract and enforce it for his own benefit. But in all such cases, there is a general clause, as to the nature of the interest insured.

The other questions discussed seem to be hinged upon those already considered, and dependent upon them; and I have not thought it necessary to examine them.

A new trial is granted, with $10 costs, to abide the event.

New trial granted.

[ERIE CIRCUIT AND SPECIAL TERM, February, 1877. *Barker*, Justice.]