## STEAMSHIP SAMANA CO., Limited, v. HALL.

### (District Court, D. Maine. September 22, 1892.)

1. **MARINE INSURANCE—LIBEL ON POLICY—LIBELANT.**

   A marine policy on the steamship Samana insured D., for account of whom it may concern, to be paid, in case of loss, to the steamship company. D. was owner of the entire stock of the company, except a small quantity held by other parties to comply with the incorporation law. The title to the vessel was in the company, and after issuing the policy it sold her to another company, taking a mortgage to D. for a large portion of the price, and agreeing to give the purchaser the benefit of the insurance on the ship, upon payment of a proportion of the premium, until other insurance should be effected. The purchaser was to keep the vessel insured to protect the mortgagee, and for his own benefit. Before other insurance was effected the vessel was lost. *Held*, that under the provisions that, in case of loss, payment should be made to it, the company could maintain a libel on the policy, not only for its own interest, but also for the interest of all others having rights under the policy.

2. **SAME—CANCELLATION—LIABILITY FOR LOSS.**

   A vessel covered by a marine policy was sold, and a mortgage taken for the price, the seller agreeing to give the purchaser the benefit of the insurance until other insurance could be effected. On November 22, 1888, she sailed from New York to Aux Cayes, a voyage usually lasting eight days. On November 24th, 25th, and 26th a hurricane of great violence prevailed over her course, and she was never again heard of; but, as there was no telegraphic communication with Aux Cayes, her failure to reach that port remained unknown for a long time. On December 3d, before any apprehensions as to her safety had arisen, the purchasers of the vessel effected new insurance, to commence on that day, and a cancellation slip was affixed to the policy as follows: "At the request of the assured, this policy is hereby canceled at and from Dec. 3, '88, at noon, pro rata premium to be paid for 8 months not used." The unused premium was returned. *Held*, that the cancellation was not intended to, and did not, discharge the insurer from liability for loss prior to the date of cancellation, and that the insured was entitled to recover, the returned premium having been paid into court.

3. **SAME—PROOF OF LOSS—WAIVER.**

   An insurer, by denying liability for loss on the ground that he was released therefrom by a cancellation of the policy, is estopped to object to the want of preliminary proofs.

In Admiralty. Libel on a policy of insurance by the Steamship Samana Company, Limited, against Albert B. Hall. Decree for libelants.

William L. Putnam and D. W. Snow, for libelant.

Benjamin Thompson, for respondent.

WEBB, District Judge. By their policy No. 1,761, dated August 2, 1888, sundry associates of the Portland Marine Underwriters, of whom the defendant was one, insured William B. Duncan, Jr., for account of whom it may concern, to be paid in case of loss to the libelants, $2,500, from August 3, 1888, at noon, to August 3, 1889, at noon, upon the steamer Samana, her body, tackle, apparel, ordnance, munition, artillery, boat, and other furniture. The hull, tackle, apparel, and furniture were valued at $25,000; and machinery and boiler, at $20,000. By the terms of the contract, each subscriber assumed liability only in the proportion of one fiftieth part of the loss. The policy contained this provision, viz.:

"It is agreed that any change of interest in the vessel hereby insured shall not affect the validity of this policy." The premium, amounting to $175, was paid. William B. Duncan, Jr., who caused the policy to be taken, was owner of the entire stock of the Steamship Samana Company, Limited, with the exception of some $25 worth held by other parties to comply with requirements of the laws under which the company was organized.

This company, subsequent to the date of the policy, sold the steamship to another company, taking a mortgage running to Duncan as security for $28,500 of the purchase money, and agreeing to give the purchaser the benefit of the insurance on the ship, upon payment of a just proportion of the premium, until such time as other insurance should be effected. The purchasers were to keep the steamer insured to protect the mortgagees, and for their own benefit.

On the 22d of November, 1888, the steamer, being then seaworthy, and properly manned and fitted for the voyage, and loaded with a general cargo of provision and merchandise, sailed from New York for Aux Cayes, between which ports the usual passage took from seven to eight days. On the 24th, 25th, and 26th of November, after the Samana left New York, a hurricane of great violence prevailed over the portion of the ocean she was to traverse, and in the region where, in the ordinary course of her passage, she would at the time have been. She was never heard from after she sailed. But, as there was no communication by telegraph, her failure to reach, in due season, her port of destination, remained for a long time unknown, and no fears for her safety appear to have been entertained. On the 3d day of December, before any apprehensions in respect to the safety of the Samana were excited, the purchasers of the steamer advised the sellers that they had effected new insurance, to commence on that day. Thereupon the broker of the Steamship Samana Company, Limited, and of Duncan, the agent and manager of that company, communicated to the respondent, who was the attorney and general manager of the Portland Marine Underwriters, the wish of the assured to have the policy canceled at and from that date, and inclosed with the communication the policy, and a cancellation slip to be affixed to it, in these words:

"New York, Dec. 3d, 1888.

"Clause added to policy No. 1,761 of Portland Mar. Undwrs., issued to W. B. Duncan, Jr., Str. Samana: 'At the request of the assured this policy is hereby canceled at and from Dec. 3/88, at noon, pro rata premium to be paid for 8 months not used.'

"$116.67.      Walker & Hughes, per Eustace, for Assured.
"Approved."

The precise date when Hall, in behalf of the underwriters, signed the approval of this cancellation, does not appear; but on the 26th of December the same brokers wrote to Hall this letter:

"New York, Dec. 26th, 1888.

"Albert B. Hall, Esq., Atty. Portland Mar. Undwrs., Portland, Me.—Dear Sir: Referring to our respects of 3d inst., we inclose for your signature duplicate of cancellation slip sent you with policy on Str. Samana, original of which you have.

"Yours, truly,      Walker & Hughes. Pr. Eustace."

And a duplicate was returned:

"Approved. Portland Marine Underwriters.
"By Albert B. Hall, Atty."

Premium, pro rata, from December 3d, was returned; at what time, has not been shown. Later, repayment of the whole of the returned premium, with interest, was tendered the underwriters, and was rejected. At the time when he filed this libel the libelant paid into court, for the respondent, his proportion of returned premium, and interest. The insurers uniformly denied any liability for the loss.

The first question is whether the vessel insured was lost by the perils covered by the policy before the date of cancellation. Upon this point I have not the least doubt. It is unreasonable to resort to remote possibility and unsupported conjecture to overcome the force of the well-established facts in the case. Unseaworthiness has been suggested. The suggestion has no plausible basis.

As amended, the libel is promoted in behalf of Duncan, named in the mortgage; of the purchasers and mortgagors; and of the Steamship Samana Company, Limited,—as their interests may be. The policy is, in terms, made for the benefit of whom it may concern, and payable, in case of loss, to the libelant. That the interests represented by the libelant were those intended to be protected when the insurance was effected is unquestionable. The legal title of the steamer was in the corporation, but Duncan was practically the owner of the corporation's property. He took the mortgage as security for payment for the property of the corporation, that, as its general agent and manager, he had negotiated the sale of. He took the security in behalf of the corporation, and for its benefit and protection, and must be regarded as holding the mortgage in trust for it. In the negotiation for sale he contracted that the insurance, which the policy in terms provided should not be affected by any change of interest in the vessel, should be maintained for the purchaser, as he might desire, and should be at his expense, while continued in force. The provision of the policy that in case of loss payment should be made to the Steamship Samana Company, Limited, authorizes that company to maintain this libel, not only for its own interest, but also for the interest of all others having rights under the policy. Hurlbert v. Insurance Co., 2 Sum. 472; Aldrich v. Insurance Co., 1 Woodb. & M. 272; Ward v. Wood, 13 Mass. 539; Davis v. Boardman, 12 Mass. 80; Hooper v. Robinson, 98 U. S. 528; Duncan v. Insurance Co., 129 N. Y. 237, 29 N. E. Rep. 76.

The cancellation of the policy on the 3d of December, like all contracts, must be interpreted so as to uphold and effect the intention of the parties, if that intention can be ascertained, and does not conflict with any rule of law. Now it is plain that, although all parties were then ignorant of the prior loss of the vessel, and alike believed that she was in safety, yet their whole negotiation looked to the future. It did not take any account of the past. Risk from the 3d day of December on to the time when the policy would expire was the subject-matter of their negotiation. The liability of the

underwriters for loss by any of the perils insured against, which should arise thereafter, was the thing canceled. An earlier day than that fixed in the policy was agreed upon for its expiration; and .the underwriters had no more ground for denying liability for losses that had occurred before the earlier day so fixed than, if this cancellation had not been made, they would have had in case of loss prior to the 3d day of August, 1889, at noon, when, by its original terms, it would have expired, and of which no advices were received till a later day. This cancellation was, explicitly, "at and from Dec. 3." Though both parties to the cancellation believed that no loss had then occurred, it cannot be supposed that the assured would have consented to release his right to be indemnified for losses that might have been suffered between the date of sailing from New York and December 3d, if that had been demanded by the underwriters as a condition of cancellation. On that day other policies were to attach. There would be, and was intended to be, no interval when the property was uninsured, nor any period of double insurance. But, as the property was already totally lost, there was, in fact, nothing to cancel. It was of this fact that the parties were ignorant. Being nothing to cancel, there was no return premium to be paid. Tender of the sum returned, with interest, was made as soon as the truth of the case was known, and, though this tender was not accepted, the defendant's share was paid into court when the libel was entered.

The underwriters have uniformly and persistently denied any liability, and contended that the cancellation of December 3d relieved them from responsibility. They are not, therefore, in a position to object to the want of preliminary proofs, which, by the way, are not required by anything in the policy.

The learned argument respecting the jurisdiction of the court, upon the view taken of the law, and the construction given to the memorandum of cancellation, is inapplicable. There must be a decree in favor of the libelants for $50 and interest, with costs; the amount paid into court as return premium to be deducted from the sum for which execution is to issue, and to be paid back to the libelant.